UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OSVALDO RODRIGUEZ | : | 3:22-mc-00057 (SALM) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | August 1, 2022 |

**GOVERNMENT'S OPPOSITION TO MOTION**
**FOR RETURN OF SEIZED PROPERTY**

The Government respectfully submits this memorandum in opposition to petitioner Osvaldo Rodriguez's Motion for Return of Seized Property pursuant to Federal Rule of Criminal Procedure ("Rule") 41(g) (the "Motion"; Doc. 1). For the reasons set forth below, the Motion should be denied.

**I.      Procedural and Factual Background**

On June 27, 2022, United States Magistrate Judge Robert A. Richardson authorized a search warrant for 1040 Broad Street in Meriden, Connecticut. (22-mj-00654; sealed). The target of the search warrant was a "commercial business/auto shop." As Rodriguez asserts in his Motion, he "is the proprietor of one of the businesses located at the premises located at 1040 Broad Street in Meriden." He is also – as his attorney has been informed – the primary target of the Government's investigation and this search warrant. This opposition memorandum, in order not to compromise an ongoing criminal investigation, will not detail the evidence provided to show that probable cause existed for the search.[1] Suffice it to say that a U.S. Magistrate Judge reviewed an application for a search warrant (22-mj-00654; Doc. 1; sealed) and a supporting affidavit (22-

---

[1] This opposition memorandum will include facts that are known to Rodriguez.

1

mj-00654; Doc 1-1; sealed) and found probable cause existed to support the search. Attachment B to the search warrant provided that things to be seized included:

> Any computer equipment or digital devices that are capable of being used to commit or further the crimes referenced above, including which can be used to access the internet to track USPS packages, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes, including central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices including paging devices and **cellular telephones**; and drives intended for removable media; related communication devices such as modems, routers, and storage media;

(emphasis added).

Law enforcement officers executed the warrant on June 28, 2022. During the search, law enforcement seized the following items[2]:

1. Multiple blue-colored glassine baggies containing suspected fentanyl
2. Clear plastic baggie containing an off-white powdery substance
3. Multiple white glassine baggies stamped "HEISENBERG" containing suspected fentanyl
4. White compressed powdery substance in a brick-like shape, wrapped with clear plastic wrapping and carbon paper
5. White powdery substance contained within multiple blue-colored plastic baggies
6. Two clear plastic baggies with a knotted end, each containing a white powdery substance, and one clear plastic baggie containing a larger quantity of a compressed white powdery substance
7. Digital scale and plastic cup with orange towel and razorblade, with suspected white powder residue
8. Digital scale with suspected powdery residue
9. Small black champion bag
10. One small black I home duffel
11. Cell Phone belonging to I**** B****
12. Black flip phone belonging to C**** F****
13. Black flip phone belonging to C**** F****
14. Bill bearing the name Osvaldo RODRIGUEZ

---

[2] This list comes from the inventory of property taken in the warrant return, which was filed on the docket, under seal, the day after the search. A copy of the warrant and inventory were also left with Rodriguez as he was viewed as the individual primarily responsible for the business and the target of the warrant and investigation. Names – other than Rodriguez's – have been redacted from the inventory as none of the individuals listed have been charged with a federal offense.

    15. Black cell phone belonging to Osvaldo RODRIGUEZ
    16. Black TLC cell phone belonging to C**** F****
    17. Osvaldo RODRIGUEZ 8220 Cell phone[3]
    18. Cell phone belonging to H**** R****

(22-mj-00654; Doc. 6; sealed).

When officers executed the search warrant, they observed Rodriguez and another individual in the rear of the business. The individual with Rodriguez, upon seeing investigators, attempted to run away from investigators and threw a bag before being detained. Investigators located the item he threw – a plastic bag containing a distribution quantity of blue-colored glassine baggies believed to contain fentanyl. Rodriguez was detained and two cellular telephones were seized from him, as identified on lines 15 and 17 of the inventory. Rodriguez's motion presumably seeks the return of the cellular telephones listed in the inventory on lines 15 and 17, which he refers to as "the Samsung smartphone and the Android smartphone."[4]

Having seized these two cellular telephones, along with others, during the search, the Government sought warrants from Judge Richardson to search the information stored on the devices. On July 12, 2022, Judge Richardson, having reviewed the Government's affidavit (22-mj-00706; Doc. 1-1; sealed) found that probable cause existed to search Rodriguez's cellular telephones and granted warrants authorizing the search of the information found on these two cellular telephones. (22-mj-00706; Docs. 2, 4).

Rodriguez's motion seeks the return of his cellular telephones pursuant to Rule 41(g) and the Fourth and Fifth Amendments to the United States Constitution on the grounds that "[t]here is

---

[3] "8220" on line 17 of the inventory appears to be a typo as the last 4 digits of the cellular telephone are believed to be "8020."

[4] The Government has identified these as a Motorola smart phone belonging Osvaldo RODRIGUEZ assigned to phone number 860-960-8020 and a Plus smart phone with an unknown telephone number belonging to Osvaldo RODRIGUEZ.

no lawful or constitutional grounds or independent probable cause to retain the [cellular phones], as the warrant lacked particularity with respect to Mr. Rodriguez, and the search of his person and seizure of property from his person were unreasonable." (Doc. 1 at 2).

## II. Legal Standards

### A. Rule 41(g) Motions

Petitioner appeals to Rule 41(g) as the procedural vehicle for his Motion. Rule 41(g), in relevant part, provides "[a] person aggrieved by an unlawful search and seizure of property . . . may move for the property's return." Fed. R. Crim. P. 41(g). The Second Circuit has stated that, under Rule 41(g), "federal courts have equitable jurisdiction to order the return of property." *Bertin v. United States*, 478 F.3d 489, 492 (2d Cir. 2007). As with other equitable remedies, "[a] Rule 41(g) motion . . . is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006); *see also United States v. Figueroa*, No. 22 MAG. 4490 (ER), 2022 WL 2873226, at *2 (S.D.N.Y. July 21, 2022). As such, the Second Circuit has held that a district court's authority under Rule 41(g) "is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials." *De Almeida*, 459 F.3d at 382 (quoting *Application of Campola*, 543 F. Supp. 115, 117 (N.D.N.Y. 1982)).

To prevail, the Rule 41(g) moving party "must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 311 (S.D.N.Y. 2018) (quoting *Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005)). The burden is on the moving until the conclusion of the criminal proceeding. *Cf. Figueroa*, No. 22 MAG. 4490 (ER), 2022 WL 2873226, at *2 ("[A]fter

4

the conclusion of a criminal proceeding, 'the evidentiary burden for a Rule 41(g) motion shifts to the Government.'" (quoting *United States v. Corley*, No. 13-CR-48 (AJN), 2020 WL 4676650, at *14 (S.D.N.Y. Aug. 11, 2020))).

    **B.**    **Search Warrants**

The Fourth Amendment to the Constitution ensures: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, the Fourth Amendment "expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011). When determining "whether a search is reasonable within the meaning of the Fourth Amendment," courts must "examine the totality of the circumstances . . . assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (internal citations, quotation marks, and alterations excluded).

Particularity has three components: first, "a warrant must identify the specific offense for which the police have established probable cause," second, "a warrant must describe the place to be searched," and third, a "warrant must specify the 'items to be seized by their relation to designated crimes.'" *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir.2010)). The particularity requirement ensures warrants are not general, in violation of the Fourth Amendment. *See United States v. Hernandez*,

No. 09 CR 625 (HB), 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010) ("The particularity requirement prohibits general search warrants and requires a sufficient description of the evidence to be seized.").

### C. Exigent Circumstances

When certain exigent circumstances are present, courts have recognized that warrantless searches and seizures are still lawful. The purpose of this exception to the general rule of the Fourth Amendment recognizes that situations exist "in which law enforcement officers will be unable or unlikely to effectuate an arrest, search or seizure for which probable cause exists, unless they act swiftly, even though they have not obtained prior judicial authorization." *United States v. Gallo-Roman*, 816 F.2d 76, 79 (2d Cir. 1987). While instances of the exigent circumstances are "not to be lightly inferred," *United States v. Graham*, 563 F. Supp. 149, 151 (W.D.N.Y. 1983), and "subject only to a few specifically established and well-delineated exceptions," *Katz v. United States*, 389 U.S. 347, 357 (1967), it is "well established [that one] exigent circumstance is the need to prevent the imminent destruction of evidence. *Seifert v. Rivera*, 933 F. Supp. 2d 307, 318 (D. Conn. 2013)").

Courts time and again have recognized the potential destruction of evidence may constitute exigent circumstances permitting a warrantless search and not running afoul of the Fourth Amendment's protections. *See, e.g., Schmerber v. California*, 384 U.S. 757, 769 (1966) (recognizing that the "immediate danger of . . . destruction of evidence under the direct control of the accused"); *United States v. Gallo-Roman*, 816 F.2d 76, 79 (2d Cir. 1987) (holding that "because possible destruction of the evidence was imminent, the agents did not violate the fourth amendment" by conducting the search); *United States v. Medina*, 944 F.2d 60, 68 (2d Cir. 1991) ("The court then found that under the circumstances, the agents had to act quickly . . . to prevent

the destruction or moving of evidence."). The exigent circumstances exception has been held to apply both to warrantless searches of properties and persons. *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978) (holding that "warrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.") (internal citation omitted).

To determine whether such exigent circumstances are present, the Second Circuit applies an objective test. *See United States v. MacDonald*, 916 F.2d 766, 772 (2d Cir. 1990) (noting that Second Circuit panels have "repeatedly held that the determination of exigent circumstances is an objective one based on the totality of the circumstances confronting law enforcement agents."). The balancing test does not employ any set factors and no one factor is dispositive. *See Medina*, 944 F.2d at 68. Indeed, the "presence of a solitary factor [may] suffice," *MacDonald*, 916 F.2d at 770, to justify a warrantless search, such as "whether quick action is necessary to prevent the destruction of evidence." *Harris v. O'Hare*, 770 F.3d 224, 234–35 (2d Cir. 2014), as amended (Nov. 24, 2014) (internal citations omitted). The central inquiry when determining if an exigent circumstance is present "is whether the facts . . . would lead a reasonable, experienced officer to believe" there was an urgent risk of destruction of evidence. *United States v. Klump*, 536 F.3d 113, 117–18 (2d Cir. 2008).

### III. Rodriguez's Motion Should Be Denied

Rodriguez moves for the return of the cellular telephones seized from him during the search of the 1040 Broad Street property and frames his argument as a motion pursuant to Rule 41(g). Rodriguez argues the original warrant lacked particularity with respect to Rodriguez's person and, thus, did not permit the seizure of his cellular telephone under *Ybarra v. Illinois*, 444 U.S. 85

7

(1979). In a less-developed argument, Rodriguez also asserts that the warrant's "validity" is "undermine[d]" because it is directed at a commercial building with multiple businesses occupying the building, potentially subjecting innocent parties to a search.

Rodriguez's motion should be rejected. First, the issues raised by Rodriguez have already been decided by a federal magistrate judge. In granting the warrant to search the entirety of the commercial property, Judge Richardson found that probable cause existed for the search. And in granting search warrants for each of the devices, Judge Richardson found that probable cause existed that there would be evidence of criminal offenses on each device. As such, investigators were entitled to be where they were when they seized the devices and rightly determined that probable cause existed to seize the devices.

Second, investigators seized the devices pursuant to a valid search warrant that in particular spelled out that officers were authorized to seize cellular telephones. And, although the devices were seized from Rodriguez's person, *Ybarra* is readily distinguishable.

Third, even if *Ybarra* applied and the warrant did not authorize the seizure of the devices from Rodriguez, the seizure was reasonable as officers seized the devices to prevent the destruction of evidence found on them. Moreover, the subsequent grant of the warrants to search the devices confirmed that probable cause existed for seizing the cellular telephones.

Finally, the Government would note that its drug trafficking investigation into Rodriguez and others associated with the target premises is ongoing. Rule 41(g) is intended to be used only when there is no adequate remedy at law and the equities favor its use. As the Second Circuit has provided, a district court should be restrained and cautious when exercising its authority under Rule 41(g) because such actions affect federal criminal investigations.

### A. Judge Richardson Authorized the Government's Search of the Auto Shop and Affirmed the Seizure of the Phones Dispositively Determining the Legality of the Search and Seizures

The issues raised by Rodriguez have already been decided by a federal magistrate judge. In granting the warrant to search the entirety of the commercial property, Judge Richardson found that probable cause existed for the search of the whole property. As such, investigators were lawfully present at the auto shop when they encountered Rodriguez. Investigators were familiar with Rodriguez and recognized him while executing their warrant. They knew both his role at the auto shop and his role within the drug trafficking organization they were investigating. Upon determining that Rodriguez had two cellular telephones on his person, officers recognized the evidentiary value of the devices, rightly determined that probable cause existed to seize and (later) search the devices, and did seize them. In granting search warrants for each of the devices, Judge Richardson found that probable cause existed that there would be evidence of criminal offenses on each device.

As such, a judicial determination has already been made that there was probable cause for the continued seizure of the devices as well as their search. *Cf. Figueroa*, No. 22 MAG. 4490 (ER), 2022 WL 2873226, at *3 (noting that where a federal magistrate judge "authorized a warrant to search" a suspect's cellular telephones, "a judicial determination has already been made that there is probable cause to believe the phones contain relevant information, or are relevant themselves, to an investigation or prosecution"). After reviewing an affidavit that included a description of the circumstances under which the devices were seized, as the Government previously noted in its Notice to the Court (Doc. 5), Judge Richardson ratified the seizure of the cellular telephones, sanctioned the continued possession of the devices by government agents, and authorized the search of the information on those devices. The warrants, granted by Judge

Richardson, authorizing the Government's retention of the cellular telephones and their search, overcomes any argument that the Government lacks authority to maintain possession of the devices. Moreover, the Government's seeking of the warrants shows that the Government has a need for the devices as part of its investigation. As such, the Government's continued possession of the devices is lawful.

Given the grant of these search warrants by a neutral magistrate who had access to the evidence developed in the investigation to date, this Court should not disturb what is essentially law of the case. Moreover, Rodriguez will not be left without remedy as he will be able to file either a suppression motion (if he is charged) or a subsequent Rule 41(g) motion should the Government conclude its investigation without returning his devices.

### B. The Warrant Authorized the Seizure of These Cellular Telephones

Rodriguez argues the warrant to search the auto shop was (1) too general in scope (overbroad) and (2) lacked particularity. Rodriguez's argument regarding overbreadth faults the warrant for failing to identify which of the multiple businesses located at the premises should be searched. Rodriguez also argues that the warrant lacked particularity because it failed to identify any individuals who should be searched, and, under *Ybarra*, according to Rodriguez, seizure of his cellular telephone under these circumstances was unlawful. Both arguments fail.

#### 1. The Search Warrant Was Not Overbroad

Rodriguez argues the warrant was overbroad and thus invalid because the building is commercial and the warrant "fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search thereunder of other units located in the larger structure and occupied by innocent persons." (Doc. 1).

Typically, if the "premises to be searched is a multiple-family or multi-unit building, then the officers must precisely identify the particular areas of the building that they intend to search." *United States v. Maneti*, 781 F. Supp. 169, 179 (W.D.N.Y. 1991). However, the Second Circuit has recognized the practical distinction between "multi-unit apartment houses or dwellings," which are clearly subdivided and commercial spaces shared by multiple tenants without clear delineation.

From the search warrant's attached description, it is clear that the building in question is commercial in character. However, from the description and images attached, the 1040 Broad Street building is a small facility with multiple garage bays. Thus, the search warrant authorized the search of the entire property, a facility with multiple doorways, but no clear subunits.

The auto shop is not an apartment complex with distinct, separate units. *See Maryland v. Garrison*, 480 U.S. 79, 87 (1987) (authorizing warrant was for the third-floor apartment of a building, but police subsequently discovered "there were two separate units on the third floor and therefore [the police] were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant."). And Rodriguez has not argued that the auto shop is configured in such a way, simply stating that there are multiple signs. That there were multiple signs does not automatically classify the auto shop as a multi-unit complex.

The auto shop is, instead, analogous to a common "space utilized by the law office on the one hand and the business operation on the other [which] was for all intents and purposes commingled." *National City Trading Corp. v. United States*, 635 F.2d 1020, 1024 (2d Cir. 1980). The search warrant was not overbroad as there is no evidence that the multiple garage bays, apparently leading to a single space, the offices, and the other shared spaces in the building were subdivided in any meaningful way; instead, evidence suggests they were interrelated. *Cf. Steele*

11

*v. United States*, 267 U.S. 498, 502–03 (1925) ("[T]he evidence left no doubt that, though the building had two numbers, the garage business covering the whole first floor and the storage business above were of such a character and so related to the elevator that there was no real division in fact or in use of the building into separate halves.").

Moreover, a federal magistrate judge reviewed the application and affidavit in support of the warrant, considered whether probable cause existed for the search sought, and granted the warrant to search the entire commercial property. It should be noted that the magistrate judge did constrict the terms of the search – denying to investigators authority to search motor vehicles found on the property. This restriction evidences that the Judge Richardson carefully considered the breadth of the warrant sought. Whether a basis existed for the search of the entire commercial property is best addressed in a motion to suppress, once the basis for the warrant can be examined, not in an equitable proceeding during an ongoing criminal investigation.

### 2. The Search Warrant Did Not Lack Requisite Particularity

Rodriguez last argues that the warrant was deficient because it lacked particularity. According to Rodriguez, under *Ybarra*, 444 U.S. 85, the seizure of the cellular telephones was unlawful because the warrant named the property only, and not him in particular, as a subject of the search. Thus, despite his presence at the property at the time of the search, his role as a proprietor of the auto shop, and the warrant's particular listing of cellular telephones as an item to be seized, Rodriguez argues that the seizure of his cellular telephones at the property during the search was not authorized by the warrant.

In *Ybarra*, law enforcement executed a search warrant of the Aurora Tap Tavern (a bar), searching both the bar tender named in the warrant and third-party bar patrons. *Id.* at 88. The Supreme Court tossed out the search of a third-party patron, Ybarra, because the warrant "did not allege that the bar was frequented by persons illegally purchasing drugs" nor did the warrant "even

12

mention the patrons of the tavern." *Id.* at 90. *Ybarra* held that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91. The Supreme Court held the police "had no reason to believe that he had committed, was committing, or was about to commit any offense under state or federal law." *Id.* at 91. As the *Ybarra* Court explained, "a warrant to search a place cannot normally be construed to authorize a search of each individual in that place. The warrant for the Aurora Tap Tavern provided no basis for departing from this general rule." *Id.* at 92.

The Supreme Court has explained that the *Ybarra* decision is based on the innocent nature of the third-party patron of a bar. In that case, the Supreme Court "concluded that the search of Ybarra was invalid because the police had no reason to believe he had any special connection with the premises, and the police had no other basis for suspecting that he was armed or in possession of contraband." *Michigan v. Summers*, 452 U.S. 692, 695 n.4 (1981).

On this basis, *Ybarra* is distinguishable from the present case. The searched party in this case, Rodriguez, is the self-proclaimed "proprietor" of one of the businesses at the address. On top of being the proprietor of at least one of the businesses being searched, Rodriguez is the primary target of the government's investigation. Thus, unlike the third-party bar patron in *Ybarra*, Rodriguez has a special connection with the premises under investigation for large-scale narcotics trafficking and, critically, investigators are aware of Rodriguez's connection. *Cf. United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990) ("The instant case is readily distinguishable from *Ybarra*, for the Customs officials knew something more about [the defendant] than just his "propinquity" to [a co-conspirator]." Moreover, as evident by the warrant returns, multiple packages of suspected narcotics are being found during the search of the commercial space where Rodriguez is a proprietor.

Because "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to . . . frantic efforts to conceal or destroy evidence," Summers, 452 U.S. at 702, an individual associated with the subject premises and targeted by the investigation may attempt to conceal evidence – particularly non-contraband evidence such as a cellular telephone – on his person. Critically, cellular telephones were explicitly included in the search warrant and two were found on Rodriguez's person. A rule that prohibits the seizure of items clearly delineated in the warrant if those items are found on individuals inside the subject premises creates the perverse incentive for individuals to grab items of evidentiary value and stuff their pockets.

### C. Even if the Original Warrant Did Not Authorize the Seizure of the Phones, Investigators Could Seize the Phones Under an Exigent Circumstances Exception and Later Obtain a Warrant

The facts surrounding the search of the auto shop support a finding that exigent circumstances existed for investigators to seize Rodriguez's cellular telephones without first applying for a warrant in order to prevent the destruction of evidence. The Second Circuit has held that "the ongoing sale and distribution of narcotics constituted a grave offense" and counsels in the direction of finding an exigent circumstance exception. *United States v. MacDonald*, 916 F.2d 766, 770 (2d Cir. 1990). More to the point, once law enforcement had entered the property, any hope to maintain a covert investigation went extinct. Rodriguez, being inside the building at the time of the search and seizure, was unmistakably notified that he, his associates, and his business were under investigation by federal law enforcement in connection to drug trafficking. This notice has been repeatedly held sufficient to support a finding of an exigent circumstance. *See, e.g., United States v. Young*, 909 F.2d 442, 446 (11th Cir. 1990) (In the case of a warrant for a premises, the executing officers had an "objectively reasonable basis to believe that she was attempting to flee with contraband or evidence. He was therefore justified in searching her purse,

even in the absence of a search warrant specifically covering her 'person.'"); *Seifert*, 933 F. Supp. at 320 (noting that a police visit to a suspect's home put the suspect and his associates on notice that the police were closing in on them, which supported the "reasonable" inference that the suspect "would destroy evidence as they had been alerted that their . . . [crime] had been uncovered by the police."); *Graham*, 563 F. Supp. at 152 (The suspect "and the others in the house quite probably would have become fully alerted to the approaching search of the premises for bank robbery proceeds and resolved to destroy . . . such evidence.").

The propensity for individuals to destroy evidence when they learn they are the targets of a drug trafficking investigation is well known from images of traffickers flushing narcotics when police are at the door to the now common idiom that traffickers regularly or when they believe authorities are targeting them "drop their phones" to get rid of electronic evidence. The Supreme Court recognized as much over 40 years ago noting that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to . . . frantic efforts to conceal or destroy evidence." *Summers*, 452 U.S. at 702.

In drug trafficking today, communication through usage of phones is so common as to be nearly ubiquitous. *See United States v. Barret*, 824 F. Supp. 2d 419, 448 (E.D.N.Y. 2011) (recognizing that "individuals involved in narcotics trafficking typically use cellular phones to communicate and store information and other records on their phones"). The search warrant signed by Judge Richardson authorized seizure of cellular telephones found during the search. Clearly, the vital role phones play in controlled substance operations is well understood. Given the expertise of the investigators, the inference that Rodriguez's cellular telephones would contain critical evidence in them was reasonable. Moreover, Rodriguez's knowledge that he and the business he managed were targeted in a federal narcotics investigation "would lead a reasonable,

15

experienced officer to believe" there was an urgent risk of destruction of evidence. *See United States v. Klump*, 536 F.3d 113, 117–18 (2d Cir. 2008).

As noted previously, probable cause exists that Rodriguez's cellular telephones contain evidence of the offense as found by Judge Richardson. Moreover, the seizure of Rodriguez's telephone was a *de minimis* invasion of his privacy. After all, once the cellular telephones were observed, their seizure did not lead investigators to learn anything more regarding Rodriguez's private life. The cellular telephones were no more than mere paperweights until the information in them is searched. That information was not searched until after Judge Richardson ratified the seizure of the cellular telephones by sanctioning the continued possession of the devices by government agents, and authorizing the search of the information on those devices.

## D. Because Rule 41(g) Is an Equitable Remedy, the Court Should Decline To Exercise Its Equitable Jurisdiction During an Ongoing Criminal Investigation

As previously noted, the Second Circuit has recognized that Rule 41(g) grants federal courts equitable jurisdiction to order the return of seized property. *See Bertin*, 478 F.3d at 492. Such authority should be exercised "only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *De Almeida*, 459 F.3d at 382. The Second Circuit has advised district court to be restrained and cautious in exercising such power when it comes to active federal criminal investigations. *See id*.

Here, a federal magistrate judge has already reviewed details of the investigation and determined that probable cause existed to search the entirety of the auto shop and both of Rodriguez's cellular telephones. Moreover, there is not only an adequate, but a better, remedy available at law. Should the evidence found on the cellular telephone lead to Rodriguez's arrest and prosecution, he can move to suppress that evidence with a judge able to review the affidavits, take sworn testimony, and review the actions of investigators in their entirety, and, critically,

16

without interfering with an ongoing investigation. Thus, where Rodriguez has presented no argument regarding what equities may favor the exercise of this Court's equitable jurisdiction, this Court should decline to exercise that power without prejudice to a later motion to suppress or, if necessary, a later Rule 41(g) motion after the investigation (and prosecution) has concluded.

**IV.     Conclusion**

    For the reasons set forth herein, Rodriguez's Motion for Return of Seized Property should be denied and dismissed.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

_____
KONSTANTIN LANTSMAN
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv10692
157 Church Street, 25th Floor
New Haven, CT 06510
Tel.: (203) 821-3700
Email: Konstantin.Lantsman@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 1, 2022, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
KONSTANTIN LANTSMAN
ASSISTANT UNITED STATES ATTORNEY